IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:24-cv-671

ROBERT TEMPLETON,

       Plaintiff,

    v.

CITY OF HIGH POINT;

BRIAN EVANS, individually and
in his official capacity as
Fire Chief for the City of High Point; and

THOMAS REID, individually and
in his official capacity as
Fire Chief for the City of High Point,

       Defendants.

COMPLAINT
(Jury Trial Demanded)

## COMPLAINT

Plaintiff Robert Templeton files this Complaint against Defendants City of High Point ("High Point"); Brian Evans, individually and in his official capacity as Fire Chief for the High Point Fire Department ("HPFD"); and Thomas Reid, individually and in his official capacity as Fire Chief for the HPFD; seeking relief pursuant to the First Amendment to the United States Constitution for the hostility, discrimination, and retaliation he was subjected to while working for the HPFD.

## PRELIMINARY STATEMENT

1.      For over twenty-four years, Templeton has dedicated his life to serving members of the High Point community as a fire fighter for the HPFD.

1

2.     Templeton is a member of Local 673 of the International Association of Fire Fighters ("IAFF"), which is the union which represents fire fighters who work for the HPFD. Templeton is currently President of IAFF Local 673.

3.     As President of IAFF Local 673, Templeton has repeatedly advocated for HPFD fire fighters on a variety of matters of public concern such as low pay, pay compression, poor staffing, lack of safety equipment, and other issues which affect the day-to-day operations of the HPFD.

4.     In response, Defendants have disciplined Templeton, disparaged his character, and have now threatened to terminate his employment unless he stops fighting for the rights, safety, and wellbeing of HPFD fire fighters.

5.     Templeton is filing this action to address the hostility he and other members of IAFF Local 673 have been subjected to by Defendants for years. Templeton is also filing this action to pursue meaningful change within the HPFD so that members of IAFF Local 673 can continue working in High Point, without fear of reprisal whenever they raise awareness about working conditions within the HPFD.

6.     Templeton is seeking a declaratory judgment and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2022, 42 U.S.C. §§ 1983, 1988 and North Carolina law. Templeton is also pursuing compensatory damages, attorneys' fees and costs, and all other relief available under 42 U.S.C. §§ 1983, 1988 and North Carolina law.

## THE PARTIES

7.     Plaintiff Templeton is an adult individual who resides in Greensboro, North Carolina. Templeton is a "citizen of the United States" as defined by 42 U.S.C. § 1983.

8.     Defendant High Point is a municipality incorporated under the name "City of High Point" and organized pursuant to the laws of the state of North Carolina. At all times relevant, Defendant High Point was a "person" within meaning of 42 U.S.C. § 1983, with the authority to sue and be sued.

9.     Defendant Evans is currently the interim Fire Chief of the HPFD. As Fire Chief, Defendant Evans is the highest-ranking fire fighter in the HPFD, and he is primarily responsible for the management of HPFD's day-to-day operations.

10.     Defendant Reid was the Fire Chief of the HPFD from 2013 through March 2024. During his tenure as HPFD Fire Chief, Reid was the highest-ranking fire fighter in the HPFD, and he was primarily responsible for the management of HPFD's day-to-day operations.

11.     At all times relevant, Defendants Evans and Reid acted under color of state law and is a "person" within meaning of 42 U.S.C. § 1983, subject to liability for violations of the First and Fourteenth Amendments to the United States Constitution.

<u>**JURISDICTION AND VENUE**</u>

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that Templeton's claims arise under the laws of the United States and Templeton seeks redress for violations of federal laws. The Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367, because such claims are so closely related to Templeton's federal claims that they form part of the same case or controversy.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, as Defendant is located within the Middle District of North Carolina and a substantial part of the events and omissions giving rise to this action occurred within the Middle District of North Carolina.

## FACTUAL BACKGROUND

A.    **High Point Government and the Officials with Policymaking Authority**

14.     High Point operates under a Council-Manager form of government, and under this form of government, the High Point City Council ("City Council") acts as High Point's governing body, and the City Manager handles the administrative functions for the City.

15.     Currently, the City Council is comprised of the following nine members: Mayor Cyril Jefferson, Council Member Britt Moore, Council Member Amanda Cook, Council Member Vickie McKiver, Council Member Tyrone Johnson, Council Member Monica Peters, Council Member Dr. Patrick Harman, Council Member Tim Andrew, and Council Member Michael Holmes. These members of the City Council are elected by the citizens of High Point.

16.     The City Manager is appointed by City Council, and that individual has a variety of powers and duties, including the authority to organize the administrative functions and affairs of the City; appoint and remove all heads of departments and all subordinate officers and employees of the city; adopt, revise or rescind human resources policies and procedures which apply to High Point employees ("HP Personnel Resolutions"); and enforce and apply all employee-related policies and procedures, including the HP Personnel Resolutions, to High Point employees. High Point Municipal Code, Art. IV, Chp. 1, Sec. 4.2; Rule 1.3 of the HP Personnel Resolutions.

17.     The City Manager is supervised by and reports directly to the City Council.

18.     The current City Manager is Tasha L. Ford, and she is responsible for supervising and/or overseeing twenty-one departments within High Point, including the HPFD.

4

**B.** <u>**Defendants Evans and Reid and the Policymaking Authority within the HPFD**</u>

19. The Fire Chief is the head of the HPFD, and by law, controls the operations of the HPFD. High Point Municipal Code, Title 5, Chp. 2, Sec. 5-2-2.

20. In addition, the HPFD Fire Chief has the responsibility and authority to implement all orders, rules, and regulations set for the HPFD by the City Manager. High Point Municipal Code, Title 5, Chp. 2, Sec. 5-2-2.

21. While the HPFD Fire Chief's authority is subject to the supervision of the City Manager, the City Manager has been historically deferential to the HPFD Fire Chief on all decisions which concern the day-to-day operations of the HPFD.

22. As a result, the HPFD Fire Chief has been primarily responsible for managing the day-to-day operations of the HPFD, which includes making decisions on hiring and firing personnel, promotions, suspensions, and anything else which might impact the terms and conditions of a fire fighter's employment with the HPFD.

23. All HPFD officers, fire fighters, and personnel ultimately report to the Fire Chief. High Point permits HPFD employees to also report their concerns to High Point's Human Resources Department ("HR Department"). However, the HR Department has rarely, if ever, challenged a decision by the HPFD Fire Chief which concerns the day-to-day operations of the HPFD.

24. As a result, HPFD's organizational structure is designed to protect HPFD's Fire Chief and other HPFD leaders who are aligned with the Fire Chief, even when their actions violate the law.

5

25.    In situations where fire fighters have spoken out and questioned the decisions made by the Fire Chief or his allies, there has been no mechanism to protect those fire fighters from retaliation and/or abuse other than legal action.

26.    This legal action exposes the way HPFD retaliated against Templeton for repeatedly speaking out about matters of public concern as President of IAFF Local 673.

**C.    Defendants' Favorable Treatment of Templeton as a Non-Union Fire Fighter**

27.    Templeton began working for HPFD in July 2000 as a full-time fire fighter.

28.    Throughout his employment with HPFD, Templeton has performed the essential duties of his job, and he has performed them well.

29.    In fact, from July 2020 through December 2022, HPFD officials regarded Templeton's work performance and commitment to serving the High Point community as exemplary. Moreover, High Point often showcased Templeton when he was performing in public-facing roles (*e.g.*, Honor Guard).

30.    Things, however, changed when Templeton was elected to lead IAFF Local 673.

**D.    HPFD's Discriminatory and Harassing Treatment of Templeton as Union President**

31.    In January 2023, Templeton became President of IAFF Local 673. Immediately thereafter, Templeton began to advocate on a variety of matters of public concern ("HPFD Public Concerns") which were affecting HPFD fire fighters, including

a.    inadequate pay for HPFD fire fighters;

b.    pay compression issues which disproportionately impacted veteran HPFD fire fighters;

c.    poor retention of experienced HPFD fire fighters;

d.    HPFD's repeated failure to fill vacant positions within the Department;

e.    HPFD's failure to procure uniforms for HPFD fire fighters;

6

f.      HPFD's failure to obtain safety equipment for HPFD fire fighters;

g.      insufficient staffing on HPFD fire engines;

h.      unresolved mechanical issues which prevented the proper operation of HPFD fire engines; and

i.      scheduling-related issues which prevented HPFD fire fighters from attending classes that were required for promotion.

32.      In response to Templeton's advocacy on the HPFD Public Concerns, HPFD began to retaliate against Templeton. For example,

a.      From January 2023 through March 2023, Templeton spoke with Defendant Reid, who was HPFD's Fire Chief, and Defendant Evans, who was HPFD's Deputy Chief, about the HPFD Public Concerns. When Defendants Reid and Evans failed to take any action to address those matters of public concern, Templeton met with City Manager Ford to discuss the HPFD Public Concerns. A few weeks later, Templeton was disciplined for a traffic-related issue that non-union employees were rarely, if ever, disciplined for.

b.      In April 2023, Templeton continued to advocate on the HPFD Public Concerns to Defendants Reid and Evans. During an event with HPFD employees and visiting fire fighters from another North Carolina city, Defendant Evans publicly disparaged Templeton's work as President of IAFF Local 673 by stating that Templeton was "trying to screw the city" with his advocacy.

c.      From May 2023 through September 2023, Templeton continued to advocate on the HPFD Public Concerns to Defendants Reid and Evans. In Summer 2023, HPFD Battalion Chief Chase Comer interrupted Templeton while he was leading a training exercise and publicly berated him for going outside the HPFD chain of command. In September 2023, Templeton was disciplined for raising a concern to HPFD leadership on an issue that that non-union employees had never been disciplined for. When Battalion Chief Comer issued Templeton his discipline, he stated "ever since you took over the union, you are negative, always complaining about everything, and talking crap about the administration."

d.      In October 2023, Templeton receive his annual performance review which referenced numerous disciplinary actions that HPFD allegedly issued to Templeton, but with no prior notice. Templeton's 2023 annual performance review was the worst of his career. As a result of these negative evaluations, Templeton's compensation in 2024 was lowered.

7

e.  In November 2023, Templeton was involuntarily transferred to a fire station that is regarded by HPFD fire fighters as a "punishment station" weeks after IAFF Local 673 endorsed Cyril Jefferson for Mayor.

f.  From March 2024 through April 2024, Templeton spoke with Defendants Reid and Evans about the HPFD Public Concerns. When Defendants Reid and Evans continued to ignore these concerns, Templeton reached out to City Manager Ford for another meeting. A few weeks after, on April 8, 2024, HPFD Deputy Chief Jayson Valade pulled Templeton from a training exercise without explanation and brought him before Defendant Evans. Defendant Evans then told Templeton he was being disciplined because he went outside the HPFD chain of command and attempted to speak with High Point officials about the HPFD Public Concerns.

33.  When Templeton received his written discipline from Interim Chief Evans on April 8, 2024, the document specifically stated that Templeton had violated the following rules from the HP Personnel Resolutions:

**Rule 5.4**, which states that "[p]roductive and harmonious relationships between City employees and management can best be achieved with respect to working conditions if relationships and policies are clearly set forth. The following shall be considered the official policy of the City relating to employee-employer relations:

(a)  The City, in accordance with North Carolina State, Law does not accept any employee organization as the sole spokesman for any category of employees.

(b)  Employees or employee representatives of employee groups will be afforded the right to present suggestions and make statements on any issue relating to conditions of work to the City Manager.

…

(d)  Infractions of work rules including unauthorized absences from work shall be grounds for disciplinary action up to and including dismissal.

The City Manager is the spokesman for the City in matters concerning employee-employer relations. The City Manager, or a designee, is hereby empowered to meet and confer with employees.

**Rule 5.11**, which states that "[e]very employee has a civic responsibility to support good government by every available means and in every appropriate manner. Each employee may join or affiliate with civic organizations of a partisan or political nature, may attend political meetings, may advocate and support the principles or policies of civic or political organizations in accordance with the constitution and laws of the State of North

Carolina and in accordance with the Constitution and laws of the United States of America. However, no employee shall:

(a)     Engage in any political activity while on duty;

…

(c)     Coerce or compel contributions for political or partisan purposes by any other employee of the governmental unit; or

(d)     Use any supplies or equipment of the governmental unit for political purposes.

…

(g)     Any violation of this section constitutes misconduct and shall subject an employee to dismissal or other disciplinary action.

34.     Templeton filed two grievances with the High Point HR Department over the following retaliatory actions he experienced from Defendants: (a) the low evaluation scores he received in his 2023 annual performance review and (b) the April 2024 discipline issued by Defendant Evans for going outside the HPFD chain of command and speaking with High Point officials (*i.e.,* violation of Rules 5.4 and 5.11 of the HP Personnel Resolutions).

**E.     High Point's Approval of the Discriminatory and Harassing Treatment of Templeton**

35.     On May 3, 2024, Templeton met with Scherrie Lowery, High Point's Assistant Director of HR, and HPFD Battalion Chief Travis Thompson, to discuss the two grievances he filed.

36.     During that meeting, Templeton explained that he was forced to file his grievances because there was an ongoing pattern and practice of retaliatory behavior within the HPFD, which Defendants were aware of and approved, in which IAFF Local 673 members have been punished for speaking up about matters of public concern. Templeton then reiterated the matters of public concern that he had been advocating for as President of IAFF Local 673 for

9

HPFD fire fighters since January 2023. Lowery ended this meeting by stating that she would investigate the information that Templeton provided.

37. On May 28, 2024, Templeton met with the following High Point representatives about the two grievances he filed: Defendant Evans, Lowery, Battalion Chief Thompson, Deputy Chief Valade, and Angela Kirkwood, High Point's Director of HR.

38. During this meeting, Templeton stated the following: (a) he was being targeted and retaliated against by HPFD officials because he repeatedly spoke up about matters of public concern; (b) he was unfairly disciplined by HPFD officials because of his union-related activity, which included speaking with High Point officials about matters of public concern; (c) HPFD did not have a factual basis to discipline him or issue him a low score in his annual performance review; (d) Defendant High Point was aware that HPFD officials, including Defendants Evans and Reid, were targeting Templeton because he spoke up about matters of public concern; and (e) Defendant High Point was also aware that HPFD officials, including Defendants Evans and Reid, had engaged and continued to engage in anti-union conduct which affected IAFF Local 673 members.

39. The High Point representatives responded to Templeton's allegations by admitting that Templeton was being punished for speaking up about matters of public concern with High Point officials because such conduct violated Rules 5.4 and 5.11 of the HP Personnel Resolutions. Then, the High Point representatives ordered Templeton to "not cross the line" or violate the chain of command by speaking to High Point officials about matters of public concern in the future. Throughout the meeting, the High Point representatives repeatedly emphasized that because Templeton is an HPFD employee, he can only discuss concerns which reference or relate to HPFD with his HPFD supervisors.

10

40.     Templeton's meeting with the High Point representatives ended after both grievances were denied and Templeton was told that any further violations of the HPFD chain of command could result in the termination of his employment.

**F.     Defendants' History of Anti-Union Activity**

41.     On June 29, 2024, Templeton received reports from HPFD employees that HPFD Battalion Chiefs were going around the fire stations and telling HPFD fire fighters to either get out of the union or to not join the union.

42.     Upon information and belief, this anti-union conduct by the HPFD Battalion Chiefs was done at the direction of Defendant Evans.

43.     HPFD's effort to harm and dismantle IAFF Local 673 has been part of an ongoing pattern and practice of anti-union behavior by the HPFD which includes, but is not limited to, disciplining past officers of IAFF Local 673 whenever they spoke up about matters of public concern for infractions that non-union members were rarely, if ever, disciplined for; disciplining IAFF Local 673 members for engaging in union-related activity within the High Point community; and repeatedly passing over for promotion IAFF Local 673 members for less-qualified, non-union fire fighters.

44.     In addition, HPFD leaders routinely dissuaded new HPFD employees from joining IAFF Local 673. In some situations, HPFD leaders would state, "if you want to join the union, it's fine but I wouldn't suggest it." When additional persuasion was needed, the HPFD leaders would list the names of IAFF Local 673 members who had been punished, involuntarily transferred, and/or were routinely denied promotions because of their union involvement. As a result, HPFD fire fighters routinely remark that IAFF Local 673 is a death sentence for your career.

11

45.     Upon information and belief, every officer of IAFF Local 673 who has spoken up about matters of public concern has been disciplined.

46.     Defendants' decision to repeatedly discipline Templeton for speaking up about matters of public concern is a continuation of a pattern and practice of retaliatory behavior by Defendants in which union members, like Templeton, who speak publicly about matters of public concern are punished, ostracized, and otherwise harmed for their efforts to address issues of low pay, pay compression, insufficient staffing, lack of resources, and other issues which could impact the safety of the High Point community.

47.     Upon information and belief, Defendant High Point has been aware of, approved, and/or otherwise authorized the actions of HPFD officials, which includes Defendants Evans and Reid, that involved targeting and disciplining Templeton after he spoke up about matters of public concern.

48.     Prior to commencing this lawsuit, Templeton made multiple attempts to contact Defendants to resolve this dispute short of litigation.  To date, Defendants have failed or otherwise refused to make Templeton whole for the discipline and other retaliation he suffered. There is little prospect that, lacking judicial compulsion, Defendants will abide by its obligations under the U.S. Constitution or redress the harm to Templeton caused by the unlawful retaliation.

## STATEMENT OF CLAIMS

### COUNT I

42 U.S.C. § 1983 – Retaliation in Violation of Plaintiff's Rights to Free Speech
Pursuant to the First and Fourteenth Amendments to the United States Constitution
(Plaintiff v. all Defendants)

49.     Templeton incorporates by reference the allegations in Paragraphs 1 through 48, as if fully set forth herein.

50.     The right of Templeton to speak freely about matters of public concern is protected by the First Amendment and Fourteenth Amendments to the United States Constitution. The public has a vital interest in free and open discussion on issues of public importance.

51.     It is a violation of the First Amendment and Fourteenth Amendment of the United States Constitution for public employers, including Defendants, to discriminate against and discipline its employees in retaliation for engaging as a private citizen in speech about matters of public concern.

52.     Templeton raised concerns to the City Council, City Manager, the Fire Chief, and other members of the High Point community about issues concerning inadequate pay for HPFD fire fighters; pay compression issues which disproportionately impacted veteran HPFD fire fighters; insufficient staffing; lack of safety equipment and uniforms; inoperable equipment; and other issues affecting the day-to-day operations of the HPFD. These issues that Templeton raised to Defendants are matters of public concern, and Templeton's right to speak out about such issues are protected by the First Amendment and Fourteenth Amendments to the U.S. Constitution.

53.     Defendants discriminated against, disciplined, and otherwise harmed the career of Templeton with HPFD for speaking publicly about matters of public concern. In so doing,

13

Defendants discriminated against and harmed Templeton in retaliation for engaging in activity protected by the First and Fourteenth Amendments' guarantee of the rights of speech and assembly.

54.     Such conduct by Defendants was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights which a reasonable person would have known.

55.     As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Templeton has suffered, and continues to suffer, economic injury, harm to his reputation, humiliation, embarrassment, discomfort, and other injuries and irreparable harm.

56.     Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, Defendants are fully liable to Plaintiff for his injuries resulting from Defendant's retaliating against him in violation of the First and Fourteenth Amendments.

57.     Defendants are also liable for Templeton's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

### COUNT II
42 U.S.C. § 1983 – Prior Restraint of Plaintiff's Rights to Free Speech
Pursuant to the First and Fourteenth Amendments to the United States Constitution
(Plaintiff v. all Defendants)

58.     Templeton incorporates by reference the allegations in Paragraphs 1 through 48, as if fully set forth herein.

14

59.     The right of Templeton to speak freely about matters of public concern is protected by the First Amendment and Fourteenth Amendments to the United States Constitution. The public has a vital interest in free and open discussion on issues of public importance.

60.     It is a violation of the First Amendment and Fourteenth Amendment of the United States Constitution for public employers, including Defendants, to prohibit its employees from engaging in speech about matters of public concern as a private citizen.

61.     Templeton spoke with members of City Council and the City Manager, as President of IAFF Local 673, about matters of public concern involving inadequate pay for HPFD fire fighters; pay compression issues which disproportionately impacted veteran HPFD fire fighters; insufficient staffing; lack of safety equipment and uniforms; inoperable equipment; and other issues affecting the day-to-day operations of the HPFD. These issues that Templeton raised to Defendants are matters of public concern, and Templeton's right to speak out about such issues are protected by the First Amendment and Fourteenth Amendments to the U.S. Constitution.

62.     In response, Defendants disciplined Templeton and prohibited him from engaging in any other speech about matters of public concern with City Council, the City Manager, or any other High Point official unless he first gets approval from his HPFD supervisor or Interim Chief Evans. Defendants have warned Templeton that if he violates this command, his employment may be terminated.

63.     Defendants' policy and command which prohibits Templeton from speaking with publicly elected officials and city representatives about matters of public concern constitutes a

15

prior restraint on Templeton's right to speak freely about the matters of public concern he raised and which are noted above.

64.     Such conduct by Defendants was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights which a reasonable person would have known.

65.     As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Templeton has suffered, and continues to suffer, economic injury, harm to his reputation, humiliation, embarrassment, discomfort, and other injuries and irreparable harm.

66.     Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, Defendants are fully liable to Plaintiff for his injuries resulting from Defendants' retaliating against him in violation of the First and Fourteenth Amendments.

67.     Defendants are also liable for Templeton's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## **COUNT III**
42 U.S.C. § 1983 – Violation of Plaintiff's Right to Freedom of Association
Pursuant to the First and Fourteenth Amendments to the United States Constitution
(Plaintiff v. all Defendants)

68.     Templeton incorporates by reference the allegations in Paragraphs 1 through 48, as if fully set forth herein.

16

69.     The right of Templeton to freely associate with other HPFD employees and/or a labor association of other HPFD employees is protected by the First Amendment and Fourteenth Amendment of the United States Constitution. The public has a vital interest in such free association.

70.     It is a violation of the First Amendment and Fourteenth Amendment of the United States Constitution for public employers, including Defendants, to discriminate against, discipline, or demote its employees for exercising their rights to free association.

71.     Templeton's right to associate with IAFF Local 673 is protected by the First and Fourteenth Amendments to the United States Constitution.

72.     At all relevant times, Defendants were aware of Templeton's association with IAFF Local 673, the labor organization comprised of fire fighters employed by HPFD. Defendants were aware of Templeton's association with IAFF Local 673 because Templeton regularly participated in the activities of the labor organization and acted as a spokesperson for IAFF Local 673 and its members on matters of public interest and concern, including inadequate pay for HPFD fire fighters; pay compression issues which disproportionately impacted veteran HPFD fire fighters; insufficient staffing; lack of safety equipment and uniforms; inoperable equipment; and other issues affecting the day-to-day operations of the HPFD.

73.     Defendants discriminated against, disciplined, demoted, and otherwise harmed the career of Templeton because of his association with IAFF Local 673 and his associational union activities on behalf of the fire fighters of HPFD and the High Point community.

74.     By engaging in this conduct, Defendants retaliated against Templeton in violation of the First and Fourteenth Amendments of the United States Constitution. Defendants' conduct also unlawfully chills the free association with IAFF Local 673, among other organizations, and

17

intimidates other HPFD employees and members of the High Point community from similarly associating with or actively participating in IAFF Local 673.

75. Such conduct by Defendants was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights which a reasonable person would have known.

76. As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Templeton has suffered, and continues to suffer, economic injury, harm to his reputation, humiliation, embarrassment, discomfort, and other injuries and irreparable harm.

77. Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, Defendants are fully liable to Plaintiff for his injuries resulting from Defendants' retaliating against him in violation of the First and Fourteenth Amendments.

78. Defendants are also liable for Templeton's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

### **COUNT IV**
42 U.S.C. § 1983 – Violation of Plaintiff's Right to Petition
Pursuant to the First and Fourteenth Amendments to the United States Constitution
(Plaintiff v. all Defendants)

79. Templeton incorporates by reference the allegations in Paragraphs 1 through 48, as if fully set forth herein.

18

80.     The right of Templeton to petition his government for the redress of his grievances is protected by the First Amendment and Fourteenth Amendments to the United States Constitution. The public has a vital interest in providing citizens with the opportunity to freely advocate for and seek change without fear of punishment or reprisal.

81.     It is a violation of the First Amendment and Fourteenth Amendment of the United States Constitution for public employers, including Defendants, to discriminate against, discipline, demote, or otherwise harm its employees in retaliation for their attempts to seek change from their elected public officials to the policies, practices, and procedures of their fire department which impact the safety of the High Point community and employees of HPFD.

82.     Templeton sought changes to HPFD's policies, practices, and procedures through High Point's elected public officials that would address issues concerning inadequate pay for HPFD fire fighters; pay compression which disproportionately impacted veteran HPFD fire fighters; insufficient staffing; lack of safety equipment and uniforms; inoperable equipment; and other issues affecting the day-to-day operations of the HPFD.

83.     Defendants discriminated against, disciplined, demoted, and otherwise harmed the career of Templeton for seeking changes through High Point's elected public officials to HPFD's policies, practices, and procedures that impacted working conditions within the HPFD and HPFD's ability to help the High Point community.

84.     By engaging in this conduct, Defendants retaliated against Templeton in violation of the First and Fourteenth Amendments of the United States Constitution.

85.     Such conduct by Defendants was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights which a reasonable person would have known.

19

86.     As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Templeton has suffered, and continues to suffer, economic injury, harm to his reputation, humiliation, embarrassment, discomfort, and other injuries and irreparable harm.

87.     Under 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, Defendants are fully liable to Plaintiff for his injuries resulting from Defendants' retaliating against him in violation of the First and Fourteenth Amendments.

88.     Defendants are also liable for Templeton's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## **<u>COUNT V</u>**
### Violation of Plaintiff's Rights to Free Speech, Petition, and Freedom of Association Pursuant to Article I, Sections 1, 12, 14, and 35 of the North Carolina Constitution (Plaintiff v. all Defendants)

89.     Templeton incorporates by reference the allegations in Paragraphs 1 through 48, as if fully set forth herein.

90.     Article I, Section 1 of the North Carolina Constitution (The Equality and Rights of Persons) provides: "We hold it to be self-evident that all persons are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness."

91.     Article I, Section 1 of the North Carolina Constitution guarantees and protects the Plaintiffs' fundamental right to practice their professions and earn a living free from

Case 1:24-cv-00671-TDS-JEP   Document 1   Filed 08/09/24   Page 20 of 24

unreasonable governmental action, such as where a governmental entity fails to follow its own personnel policies. *See e.g.*, *Tully v. City of Wilmington,* 370 N.C. 527, 535-36 (2018); *King v. Town of Chapel Hill*, 367 N.C. 400 (2014); *Treants Enterprises, Inc. v. Onslow County*, 83 N.C. App. 345 (1986), *aff'd,* 320 N.C. 776 (1987).

92.     Article I, Section 12 of the North Carolina Constitution (Right of Assembly and Petition) provides: "The people have a right to assemble together to consult for their common good, to instruct their representatives, and to apply to the General Assembly for redress of grievances; but secret political societies are dangerous to the liberties of a free people and shall not be tolerated."

93.     Article I, Section 12 of the North Carolina Constitution guarantees and protects the Plaintiffs' right to join, associate with, and support an employee association or labor organization.

94.     Article I, Section 14 of the North Carolina Constitution (Freedom of Speech and Press) provides: "Freedom of speech and the press are two of the great bulwarks of liberty and therefore shall never be restrained, but every person shall be held responsible for their abuse."

95.     Article I, Section 14 of the North Carolina Constitution guarantees and protects the Plaintiffs' right to engage in the exercise of free speech.

96.     Article I, Section 35 of the North Carolina Constitution provides: "A frequent recurrence to fundamental principles is absolutely necessary to preserve the blessings of liberty."

97.     In considering and enforcing the rights and liberties protected by Article I of the North Carolina Constitution, Section 35 requires courts to consider "fundamental principles" and to liberally construe the provisions of the Constitution protecting those liberties.

98.     The actions of Defendants in discriminating against, disciplining, demoting, and otherwise harming the career of Templeton violated his rights under Articles 1, 12, and 14 of the North Carolina Constitution. Among other things, Defendants retaliated against Templeton for his active leadership in, support for and advocacy on behalf of IAFF Local 673, and for his exercise of the right of free speech on topics of public concern including but not limited to issues of inadequate pay for HPFD fire fighters; pay compression which disproportionately impacted veteran HPFD fire fighters; insufficient staffing; lack of safety equipment and uniforms; inoperable equipment; and other issues affecting the day-to-day operations of the HPFD.

99.     In discriminating against, disciplining, demoting, and otherwise harming the career of Templeton, Defendants unlawfully deterred, discouraged, and prevented other employees from exercising their fundamental rights to free speech and association guaranteed by the North Carolina Constitution. As such, these actions by Defendants against Templeton constituted bad faith governmental actions and an abuse of governmental powers.

101. Templeton is entitled to backpay damages and compensatory relief, including for all other economic injury, harm to his reputation, humiliation, embarrassment, discomfort, and other injuries.  Templeton is also entitled to injunctive and declaratory relief to prevent High Point from continuing to unlawfully violate the North Carolina Constitution.

102.     Templeton has no other effective remedy under North Carolina law.

## **REQUESTS FOR RELIEF**

Accordingly, Templeton requests that this Court enter judgment on his behalf and enter an order directing the award of other relief, as follows:

A. Declaring that Defendants unlawfully violated Templeton's rights and privileges secured by the First and Fourteenth Amendments to the United States Constitution;

B. Declaring that Defendants unlawfully violated Templeton's rights and privileges secured by the North Carolina Constitution;

C. Entering a permanent injunction restraining and preventing Defendants from continuing to discriminate and retaliate against Templeton; from continuing to interfere with and infringe upon Templeton's rights under the First and Fourteenth Amendments to the United States Constitution; from continuing to interfere with and infringe upon Templeton's rights under the North Carolina Constitution; and from otherwise violating their obligations under the United States Constitution and North Carolina Constitution with respect to Templeton and all other persons similarly situated;

D. Ordering Defendants to rescind the retaliatory, discriminatory, and otherwise unlawful discipline they issued Templeton;

E. Ordering a complete and accurate accounting of all the compensation and relief to which Templeton is entitled;

F. Awarding Templeton back pay, front pay, lost benefits, and other emoluments of employment and such other relief as is necessary to make him whole;

G. Awarding Templeton compensatory damages for pain, humiliation, and damage to reputation;

H. Awarding Templeton punitive damages to redress the knowing, willful, wanton, reckless, and bad faith nature of Defendants' violation of Templeton's Constitutional rights;

I.      Award Templeton punitive damages to redress the knowing, willful, wanton, reckless, and bad faith nature of Defendants' wrongful discharge of Templeton for acts supported by public policy;

J.      Awarding Templeton attorneys' fees and costs;

K.      Awarding Templeton any other relief to which he is entitled and/or which this Court deems necessary and proper.

**A jury trial is demanded for all claims triable by jury.**

Respectfully submitted,

s/ Trisha Pande_____
Trisha Pande, N.C. Bar No. 53573
PATTERSON HARKAVY LLP
100 Europa Dr., Ste. 420
Chapel Hill, NC 27517
tpande@pathlaw.com

John F. Ackerman
(*Motion for Special Admission to Follow*)
Sammy Y. Sugiura
(*Motion for Special Admission to Follow*)
MOONEY, GREEN, SAINDON, MURPHY &
WELCH, P.C.
1920 L Street, NW, STE 400
Washington, DC 20036
jackerman@mooneygreen.com
ssugiura@mooneygreen.com
*Counsel for Plaintiffs*