IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBERT TEMPLETON,                )
                                 )
            Plaintiff,           )
                                 )
     v.                          )          24cv671
                                 )
CITY OF HIGH POINT et al.,       )
                                 )
            Defendants.          )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Before the court is the motion for summary judgment (Doc. 19) by Defendants City of High Point, Brian Evans, and Thomas Reid. The motion is fully briefed (Docs. 20, 23, 26), and the court heard argument on it on April 29, 2026.  At the hearing, the court granted the motion in part and denied it in part.  (See Text Order of April 29, 2026.)  The court reserved ruling on whether Defendants Evans and Reid are entitled to qualified immunity.  (See Doc. 20 at 24-27.)  For the following reasons, the court concludes that fact issues remain that preclude Defendants Evans and Reid from entitlement to qualified immunity, and the motion for summary judgment is therefore denied to that extent.

## I.    BACKGROUND

Plaintiff Robert Templeton began his employment with the High Point Fire Department ("HPFD") in June 2000.  (Doc. 23-1 at 330.) He currently holds the rank of Fire Captain II.  (Id.)  Templeton

became President of Local 673 of the International Association of Fire Fighters ("IAFF") in January 2023.  (Id. at 331, 333.)  The IAFF is a labor union which represents more than 360,000 firefighters, paramedics, and emergency responders in the United States and Canada.  (Id. at 331.)  IAFF Local 673 had fewer than ten members at the beginning of Templeton's tenure as President, despite there being approximately 240 HPFD employees.  (Id.)

Shortly after starting as President, Templeton reached out to the High Point Mayor, High Point City Council, and the High Point City Manager to express his views on what he considered "matters of public concern," "includ[ing] staffing shortages and pay-related issues."  (Id. at 333.)  On February 6, 2023, he addressed the High Point City Council about such concerns.  (Id.)  In the fall of that year he met with Cyril Jefferson, then a candidate for Mayor of High Point; news of that meeting spread throughout HPFD, and HPFD leadership, according to Templeton, backed Jefferson's opponent.  (Id. at 334.)  Several weeks after this meeting, on October 24, Templeton received the lowest performance review of his career.  (Id.)  Local 673 nevertheless endorsed Jefferson for mayor on October 30.  (Id.)  Templeton posted on social media about Local 673's support for Jefferson, both before and after Jefferson won the mayorship in November.  (Id.)

Templeton was involuntarily transferred to Station 11 from Station 4 on November 27, 2023; he had not requested a transfer.

2

(Id.)  Station 11 is a "punishment station" because, Templeton declares, higher call volume is correlated with higher performance reviews, which in turn corresponds to higher compensation.  (Id.; id. at 338.)  Station 11 is one of the slowest stations in High Point, while Station 4 is one of the busiest.  (Id. at 334-35.)

Templeton nevertheless continued to advocate for Local 673 and its interests, such as "pay compression issues, recruitment and retention issues, safety-related issues, [and] staffing shortages."  (Id. at 335, 336; see id. at 338 (stating that his public concern speech includes "posting on the union's social media about staffing shortages, pay compression issues, [and] safety-related issues; discussing the union's work with [his] HPFD colleagues; notifying the High Point community whenever there are station closures due to staffing shortages; notifying the High Point community about the need for an increased budget for the HPFD; working with the IAFF to conduct pay studies; and challenging the HPFD promotional process").)  He posted these concerns on social media, spoke with HPFD colleagues, and sought meetings with HPFD leadership on these issues.  (Id.)

On March 29, 2024, Defendant Reid, the fire chief, retired, and Defendant Evans was named interim fire chief.  (Id.)  In April, Evans met with Templeton about his union speaking and told him that fire department concerns needed to be raised through the chain of command.  (Id.)  Templeton filed a grievance thereafter.  (Id.)

3

On May 28, Templeton met with High Point officials to discuss his grievance; present at the meeting were High Point Human Resources Director Scherrie Lowery, Angela Kirkwood, and HPFD leadership, including Evans.  (Id.; see Doc. 26 at 5 n.4.)  At this meeting, Kirkwood repeatedly told Templeton that he was not prohibited from speaking as a citizen on matters of public concern.  (See generally Audio Recording of Plaintiff's May 28, 2024 Meeting (Exhibit C to Doc. 26).)  But Kirkwood and others repeatedly expressed their view that "fire department concerns" should be brought up through HPFD's chain of command, rather than directly to members of High Point's governance.  (E.g., id. at 1:05:45-1:06:10.)  A member of HPFD leadership, possibly Evans, also expressed a narrow view of what constituted a matter of public concern.  He stated as an example that the closure of six fire stations would be a matter of public concern, but that the issues Templeton had been raising were specific to HPFD – and these were "two different things." (Id. at 1:20:30-1:20:42.)

Templeton declares that he also received other corrective action by Defendants that amounted to discipline.  On March 6, 2023 (before his transfer to the "punishment station" but after he had started as President of Local 673), Templeton received a counseling form for his decision to execute a "suicide run" – deliberately driving on the left (wrong) side of the road to arrive more quickly at the scene of an emergency.  (Doc. 23-1

4

at 24.)  On September 7, 2023, Templeton received a counseling form for his objection to carrying out a training exercise during high temperatures.  (Doc. 23-1 at 38.)  Templeton declares that he has never heard of an HPFD employee being disciplined for deciding to carry out a suicide run or objecting to training exercises during high temperatures.  (Doc. 23-1 at 333.)  On April 8, 2024, Templeton received a counseling form signed by Evans, advising him that his "conversations with members of City Council in reference to Fire Department concerns . . . violate[] departmental policy (chain of command)."[1]  (Doc. 20-4 at 33.)

Templeton filed this lawsuit on August 9, 2024.  (Doc. 1.) His complaint alleges the following: a 42 U.S.C. § 1983 claim for retaliation in violation of his freedom of speech rights under the First and Fourteenth Amendments (Doc. 1 at 13 (Count I)); a § 1983 claim for a prior restraint in violation of his freedom of speech rights under the First and Fourteenth Amendments (Doc. 1 at 14 (Count II)); a § 1983 claim for violation of his right to freedom of association under the First and Fourteenth Amendments (Doc. 1 at 16 (Count III)); a § 1983 claim for violation of his right to petition under the First and Fourteenth Amendments (Doc. 1 at 18 (Count IV)); and last, a claim for violation of his freedom of speech, petition, and association rights under Article 1 of the

_____

[1] Defendants for their part offered testimony that counseling forms "are not discipline."  (Doc. 20-6 at 1 (Declaration of Scherrie Lowery).)

North Carolina Constitution (Doc. 1 at 20 (Count V)).  Templeton pleads each claim against all Defendants.  (See Doc. 1 at 13, 14, 16, 18, 20.)

On September 6, 2024, Templeton was involved in a "verbal altercation" with a community member while he responded to an emergency call; HPFD ordered him "to undergo mandatory EAP sessions" after the incident.  (Doc. 23-1 at 336-37.)  Finally, on December 30, 2024, Templeton was disciplined for failing to timely respond to an emergency call notification.  (Id. at 337.)

At the hearing on the motion for summary judgment, the court ruled on all aspects of the motion except as it related to Reid and Evans' request for qualified immunity.  The court granted Defendants summary judgment on Templeton's prior restraint claim (Count II), because Templeton offered no evidence that Defendants had actually prohibited any of his speech.  The court also dismissed Templeton's claim for violations of the North Carolina Constitution (Count V) as it related to Defendants Reid and Evans in their individual capacities, because North Carolina does not recognize a state claim against state officials in their individual capacities for alleged violations of state constitutional rights. And the court dismissed all claims against the City of High Point, because Templeton could not identify a specific city policy that led to his claimed First Amendment injury.  But the court denied the motion as it related to Templeton's First Amendment retaliation

6

claim (Count I), freedom of association claim (Count III), and petition claim (Count IV). The court reserved ruling on Reid and Evans's motion for summary judgment based on qualified immunity, which applies to those latter three claims.

## II. ANALYSIS

Qualified immunity shields government officials performing discretionary functions from personal liability for civil damages under § 1983, so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006) (quoting Wilson v. Layne, 526 U.S. 603, 609 (1999)). Officials are entitled to immunity unless the § 1983 claim satisfies a two-prong test: (1) the allegations, if true, substantiate a violation of federal statutory or constitutional right, and (2) the right was "clearly established" such that a reasonable official would have known his acts or omissions violated that right. Id.; Hope v. Pelzer, 536 U.S. 730, 739 (2002). The court may consider the prongs in either order, as a plaintiff's failure to satisfy either entitles the officer to immunity. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would

7

have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (alterations, quotation marks, and citation omitted). However, it is not necessary that the precise "action in question has previously been held unlawful." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Rather, "in the light of pre-existing law the unlawfulness must be apparent." Id. An officer has a right to fair notice of the unlawfulness of the conduct. Hope, 536 U.S. at 739. The Fourth Circuit applies a split burden of proof for claims of qualified immunity. The plaintiff bears the burden of showing a violation of his rights, while the defendant bears the burden of proving that the right was not clearly established. Stanton v. Elliott, 25 F.4th 227, 233 (4th Cir 2022).

Here, Templeton alleges that Defendants have violated his First Amendment rights. Specifically, he alleges that Defendants retaliated against him and violated his freedom of speech, association, and petition rights. (Doc. 1 at 13-14, 16-20.) To succeed on his First Amendment claims, Templeton must show: (1) the speech at issue relates to a matter of public concern, (2) his interest in First Amendment expression outweighs his employer's interest in efficient operation of the workplace, (3) he suffered an adverse action that would tend to chill his exercise of his First Amendment rights, and (4) the First Amendment expression was a "substantial factor" in his employer's decision to take the

8

adverse action. <u>Goldstein v. Chestnut Ridge Volunteer Fire Co.</u>, 218 F.3d 337, 351-52 (4th Cir. 2000); <u>see also</u> <u>Minnick v. Cnty. Of Currituck</u>, 521 F. App'x 255, 264 (4th Cir. 2013) (noting the analytical similarity between freedom of speech and freedom of association claims);[2] <u>Daniels v. Quinn</u>, 801 F.2d 687, 690 (4th Cir. 1986) ("The considerations that have led the Supreme Court to delimit the protection accorded public employees under the Free Speech Clause apply equally to the right to petition.").

In asserting qualified immunity, Defendants challenge both prongs of the defense. They argue first that Templeton has failed to offer sufficient evidence to make out a constitutional violation. More specifically, they argue that he fails to offer evidence on the third and fourth elements of his First Amendment claims – that is, he has neither suffered an adverse employment action, nor shown a causal connection between his protected speech and any adverse action. (Doc. 20 at 14-20.) They explicitly reserve argument on the question of whether Templeton can establish the first and second elements: whether his speech was on a matter of public concern, and whether his interest in speaking outweighed any disruption to workplace operations. (<u>Id.</u> at 14 n.3.)

In attacking the clearly established prong of qualified

---

[2] Unpublished opinions of the Fourth Circuit are not precedential but are cited for their persuasive, but not controlling, authority. <u>See</u> <u>Collins v. Pond Creek Mining Co.</u>, 468 F.3d 213, 219 (4th Cir. 2006).

immunity, by contrast, Defendants focus on the first two elements. They argue that whether Templeton's "workplace criticisms related to Department pay, understaffing, surrendered vacations, and leadership favoritism constitute matters of public concern that outweigh HPFD's interest in regulating the speech is a highly fact-intensive, gray area under the law" that was not clearly established. (Id. at 26; see Doc. 26 at 14 (asserting that "an employee's workplace criticisms are highly fact-intensive, gray areas under the law").)

Templeton responds by arguing that his speech about fire department issues of equipment sufficiency, recruitment and retention problems, and community safety is clearly established as a matter of public concern. (Doc. 23 at 14.) He also argues that he has suffered adverse actions, pointing to his transfer to the "punishment station" and lower appraisal scores following his speech on issues of public concern, and offering evidence that these actions will ultimately reduce his earnings. (Doc. 23 at 7, 12-14; Doc. 23-1 at 338.)

As to the first prong, the court finds that Templeton has offered sufficient evidence to support an underlying constitutional violation. Defendants argue that Templeton has failed to establish a materially adverse employment action; he has not shown, according to Defendants, that his counseling forms, lower performance reviews, or transfer to a station with lower

10

call volume will result in his losing income.  (Doc. 20 at 15-16; Doc. 26 at 6-9.)  They point to the declaration of HPFD's Deputy Chief of Operations, Jayson Valade, who states that "[c]all volume is not a metric in determining compensation."  (Doc. 26-3 at 1, 3.)  They also note the declaration of High Point's Assistant Human Resources Director, Scherrie Lowery, who states that "counseling forms are not discipline."  (Doc. 20-6 at 1.)  And they argue that Templeton has not established a causal connection between any adverse action and his speaking.  (Doc. 20 at 17-19.)

For the reasons expressed at the hearing, however, Templeton has offered sufficient evidence to establish a genuine dispute of material fact as to whether HPFD took adverse employment actions against him linked to his First Amendment expression.  As a 25-year HPFD employee, Templeton appropriately claims personal knowledge of the factors that affect compensation.  Defendants' argument that he "lacks the foundational knowledge" to support his assertion that call volume affects compensation is unpersuasive at this stage.  (Doc. 26 at 8.)  The court declines to disregard Templeton's understanding of his compensation, for two reasons. First, as a fire department employee with over 25 years' experience, it is implausible that Templeton would not have an understanding of the factors influencing his compensation. Second, record evidence indicates that "Emergency Management" is one factor impacting an HPFD employee's annual appraisal.  (See,

11

e.g., Doc. 23-1 at 277, 279-80.)  It is at least plausible that a decrease in call volume – which is to say, a decrease in Templeton's ability to respond to emergencies as a result of his transfer – could negatively impact the appraisal.

Templeton also states that Defendants repeatedly expressed their displeasure with him for going outside the "chain of command" with his public speaking on behalf of the firefighters' union,[3] and evinced a too-cramped view of matters of public concern.  In addition to the statements made in the May 28, 2024 meeting, Templeton also offers the April 8, 2024 counseling form, signed by Evans, in which the HPFD "advised" him that his "conversations with members of City Council in reference to fire department concerns . . . violate[d] departmental policy (chain of command)." (Doc. 23-1 at 42.)  There is therefore disputed evidence on the materiality of Defendants' actions, including whether they in fact reduced his compensation,[4] as Plaintiff argues, which the court

---

[3] A recording of Templeton's May 28, 2024 meeting with Defendants, offered by Defendants (Doc. 27), reflects that Templeton claimed to have attempted to raise his concerns through HPFD's chain of command, without a satisfactory response.  (Audio Recording of Plaintiff's May 28, 2024 Meeting at 58:15-1:00:17.)

[4] Defendants assert that Templeton's 2022-2023 performance review is not a materially adverse action because the lowering of his score by .19 was only "de minimis" and resulted in the same categorical score of "Meets Expectations."  (Doc. 20 at 15-16.)  Templeton declares, however, that his 2022-2023 score of 2.9 fell below the 3.0 threshold for the Meets Expectations category, and "directly lowered" his "pay since 2024." (Doc. 23-1 at 334.)  Determining who is right in this dispute is for trial, not summary judgment.

12

cannot weigh at this summary judgment stage. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Rather, Templeton has created a fact issue as to whether Defendants have materially altered the terms and conditions of his employment in a way that would deter a person of ordinary firmness from exercising his First Amendment rights.

As Templeton has offered sufficient evidence of an underlying constitutional violation, the court now considers whether Defendants have demonstrated that the law in this area was not clearly established. In determining whether a right is clearly established, the court is "not to define clearly established law at a high level of generality." Byers v. Painter, 173 F.4th 155, 165 (4th Cir. 2026) (quoting Kisela v. Hughes, 584 U.S. 100, 104 (2018)). Here, the question is whether the law was clearly established by January 2023 that Templeton had a right to speak to the public and city officials about HPFD pay, staffing and recruitment difficulties, and equipment sufficiency, without receiving transfer to a less-desirable fire station and counseling forms with lower scores that result in lower pay for him, as a result of this speaking. Cf. DiMeglio v. Haines, 45 F.3d 790, 804 (4th Cir. 1995) (phrasing the question presented as "whether it was clearly established in the Fall of 1990, when these actions allegedly occurred, (1) that statements such as those made by DiMeglio before the EBIA were constitutionally protected

13

expressions and (2) that retaliatory conduct in the form of a reprimand and reassignment of responsibilities constituted deprivation of a valuable government benefit") (footnote omitted); Lilienthal v. City of Suffolk, 275 F. Supp. 2d 684, 694 (E.D. Va. 2003) ("Stated at the appropriate level of particularity, the first right allegedly violated by defendant Outlaw is the right of a firefighter to express his personal views on a matter of public concern without being threatened with termination motivated by the fire chief's opposition to the expression of such views.").

It was. Templeton has offered evidence that he spoke to mayoral candidates, city council members, fire department employees, and the public at large about "pay compression issues, recruitment and retention issues, safety-related issues, [and] staffing shortages." (Doc. 23-1 at 335, 336.) These issues concern the ability of the HPFD to carry out its vital work protecting life and property; indeed, Templeton's concerns go to the safety of the community. Speech on these matters has been clearly established as a matter of public concern within the Fourth Circuit at least as far back as 2002. See, e.g., Lilienthal, 275 F. Supp. 2d at 691, 694 (first concluding that "fire department issues such as safety, equipment, staffing, and response time are subjects in which 'the public or the community is likely to be truly concerned' and 'interested,'" and then concluding that "in September 2002, it was clearly established that a fire chief's

14

disagreement with a firefighter's views on fire department safety issues and the firefighter's manner of expressing those views is insufficient to justify conditioning continued employment upon the cessation of the protected expression based on a perceived threat of disruption").

Defendants' argument to the contrary is sparse, and their caselaw is not on point. Although it is true that "the Fourth Circuit has recognized that only infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected," Sheaffer v. County of Chatham, 337 F. Supp. 2d 709, 722 (M.D.N.C. 2004) (quotation marks and citation omitted), Templeton's speech touches on a matter of quintessential public concern – the ability of the fire department to carry out its mission effectively, and by extension the safety of the community. And Defendants do not offer any evidence or argument at this stage of disruption from Templeton's speaking that would be necessary for this court to find their interest in suppressing the speech outweighed his interest in speaking. (See generally Docs. 20, 26.)

Because Templeton has shown that his right to speak about the ability of HPFD to carry out its mission was clearly established as a matter of public concern, any retaliation by reducing the speaker's income would constitute a clearly established violation of that right. Cf. Saleh v. Upadhyay, 11 F. App'x 241, 257 (4th

15

Cir. 2001) (per curiam) ("The reduction of Saleh's raises for three years in a row constitutes an adverse employment action that may be expected to chill an employee's First Amendment rights."). Framed as such, "a reasonable person in the official's position would have known that his conduct would violate that right." Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999).

Defendants do not argue that a reduction in income, either in the form of a direct reduction in salary or a reduction in raises and retirement benefits, would not amount to a materially adverse action for First Amendment retaliation purposes. (See generally Docs. 20, 26.) Defendants instead argue that Templeton has not shown his income has been reduced. For the reasons discussed above, however, the court cannot accept Defendants' contention at this summary judgment stage because of Templeton's conflicting evidence. Granting summary judgment on the basis of qualified immunity is therefore inappropriate.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendants' motion for summary judgment on the basis of qualified immunity (Doc. 19) is DENIED.

/s/   Thomas D. Schroeder
United States District Judge

June 18, 2026

16